**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> LAVELLE PHILLIPS, *Defendant-Appellant.* | Nos. 14-10448 <br> 14-10449 <br><br> D.C. Nos. <br> 2:12-cr-00292-MCE-1 <br> 2:13-cr-00398-MCE-1 <br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Submitted December 7, 2015[*]
San Francisco, California

Filed July 6, 2016

Before: Alex Kozinski, Jay S. Bybee,
and Morgan Christen, Circuit Judges.

Opinion by Judge Bybee;
Concurrence by Judge Christen

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

---

### Criminal Law

The panel affirmed the district court's judgments in cases in which the defendant was convicted and sentenced following his guilty pleas to possession of drugs with intent to distribute and being a felon in possession of a firearm.

The panel held that the district court committed no procedural error at sentencing.

The panel held that *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which held that felons are categorically different from the individuals who have a fundamental right to bear arms, forecloses the defendant's argument that it violates the Second Amendment for misprision of felony, a non-violent and purely passive crime, to serve as a predicate for his felon-in-possession conviction under 18 U.S.C. § 922(g)(1).  The panel wrote that there are good reasons to be skeptical of the constitutional correctness of categorical, lifetime bans on firearm possession by *all* "felons."   The panel wrote that although the defendant is right that misprision is not a violent crime, he is wrong about misprision of felony being purely passive, where the crime has long been interpreted to contain some element of active concealment.  The panel wrote that it was hard pressed to conclude that a crime that has always been a federal felony cannot serve as the basis of a federal firearm ban simply because its actus reus may appear innocuous.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Concurring, Judge Christen wrote that because binding precedent forecloses the defendant's Second Amendment challenge, she would not engage in further analysis of it.

## COUNSEL

Douglas Beevers, Assistant Federal Defender; Heather E. Williams, Federal Defender; Federal Defenders of the Eastern District of California, Sacramento, California; for Defendant-Appellant.

Jason Hitt, Assistant United States Attorney; Camil A. Skipper, Appellate Chief; Office of the United States Attorney, Sacramento, California; for Plaintiff-Appellee.

## OPINION

BYBEE, Circuit Judge:

Lavelle Phillips pleaded guilty to possession of drugs with intent to distribute, as well as being a felon in possession of a firearm. He was sentenced to 57 months in prison. On appeal he asks us to invalidate his sentence as procedurally flawed and to hold that his conviction violates the Second Amendment. We decline both invitations and affirm.

## I. BACKGROUND

Police officers approached Phillips while he was in his car. They smelled marijuana and noticed a partially-empty bottle of alcohol, and tried to arrest him. Phillips violently resisted and fled. After finally subduing him and searching

Phillips's car, police found drugs, scales, and money. Three days later, Phillips was released on bail.

Only a few months after that, a different set of officers came upon Phillips talking with another man in front of a home. As they approached, Phillips fled. And this time he got away, but not before dropping a .45 caliber handgun, a high capacity magazine, and his wallet, complete with several forms of identification and his recent bail receipt.

Phillips was indicted in two separate cases. In August of 2012, he was brought up on charges of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He filed a motion to dismiss the indictment, arguing that § 922(g)(1) was unconstitutional, as applied, under the Second Amendment. The district court denied the motion. Phillips then pleaded guilty. In December of 2013, Phillips was separately indicted for possession of various drugs with intent to distribute. Early the next year he pleaded guilty to these drug charges as well. The district court then consolidated both cases for sentencing purposes.

At sentencing the district court ultimately calculated a Guidelines range of 37 to 46 months. The district court reviewed all the relevant sentencing materials and considered the particulars of Phillips's case (e.g., that he fled police, had an extended magazine with his gun, etc.). Then it ran through the relevant factors under 18 U.S.C. § 3553(a) and varied upward to impose concurrent 57 month sentences on both the gun and drug charges. Phillips timely appealed. He argues that his sentence was procedurally flawed and that his conviction for being a felon in possession violates the Second Amendment. We review the former claim for plain error, since Phillips never raised these particular objections below,

*United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 (9th Cir. 2010), while we review the latter claim de novo, *United States v. Chick*, 61 F.3d 682, 686 (9th Cir. 1995).

## II. ANALYSIS

A. *Procedural Error at Sentencing*

We can easily dismiss Phillips's procedural error argument. When we review sentencing for plain error, "reversal is not justified where the [district] court review[ed] and listen[ed] to the defendant's arguments, state[d] that it has reviewed the criteria set forth in § 3553(a), and then impose[d] a sentence, explaining both the sentence and the justification for the decision." *United States v. Rangel*, 697 F.3d 795, 806 (9th Cir. 2012). That is precisely what happened here.

The district court read all relevant materials, understood the proper role of the guidelines (i.e., that they "are advisory and not mandatory"), considered the relevant factors under § 3553(a), and decided to vary upward from the Guidelines range based on Phillips's particular circumstances. Specifically, the court noted that Phillips had come into federal court more than once, understood "right and wrong" but kept making "incredibly stupid decisions," and had a penchant for running from the police. We discern no error here, let alone a plain one.

Phillips's arguments to the contrary are based entirely—and admittedly—on speculation of the first order. Phillips believes that throughout the sentencing, the judge made "vague comments" that "appear to reject several of the Sentencing Commission's basic guidelines." He concludes

that these "policy disagreements" ranged from the district court's belief that a six-level enhancement for high capacity magazines was "too lenient," to a disagreement with giving prior convictions that receive prison time only "3 criminal history points." All of Phillips's conclusions are reached, of course, in splendid isolation from the record, for, as he frankly admits in his brief, the district court "never expressly mentioned such a policy disagreement." If the district court judge harbored any policy disagreements, he appropriately kept them to himself and gave no indication that they influenced the sentence whatsoever. Phillips's sentencing, even if not perfect, was about as much as anyone could ask for, and the court committed no procedural error.

## B. *Second Amendment Claim*

Phillips's other argument—based on his motion to dismiss the indictment (for felon in possession) on Second Amendment grounds—is more significant. The predicate for Phillips's § 922(g)(1) conviction was a prior conviction for "misprision of felony." 18 U.S.C. § 4. Misprision of felony consists of "having knowledge of the actual commission of a felony cognizable by a court of the United States," and "conceal[ing] [it]" by not "mak[ing] known the same [as soon as possible] to some judge or other person in civil or military authority under the United States." *Id.* It is punishable by a fine and up to three years in prison. *Id.*

Phillips argues that misprision of felony is a non-violent, "passive crime of inaction," and that permitting it to serve as a predicate for his § 922(g)(1) conviction violates the Second Amendment. Although Phillips's situation presents some otherwise interesting issues of Second Amendment

jurisprudence, his claim is ultimately foreclosed by our precedent.

The Second Amendment protects the right to "keep and bear arms." U.S. Const. amend. II. The Supreme Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), held that this right encompasses an individual right to possess a functioning firearm in the home for the lawful purpose of self defense. *Id.* at 595, 635. But the Court was careful to add a caveat, instructing the lower courts that its holding did not "cast doubt on longstanding prohibitions on the possession of firearms by felons . . . [,]" *id.* at 626–27, adding that such measures were "presumptively lawful," *id.* at 627 n.26.

Based on this language, we held in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), that "felons are categorically different from the individuals who have a fundamental right to bear arms," and we accordingly upheld 18 U.S.C. § 922(g)(1) against a Second Amendment challenge. *Id.* at 1115; *see also Van Der Hule v. Holder*, 759 F.3d 1043, 1050–51 (9th Cir. 2014) (relying on *Vongxay* to again uphold 18 U.S.C. § 922(g)(1) as constitutional); *United States v. Chovan*, 735 F.3d 1127, 1144–45 (9th Cir. 2013) (Bea, J., concurring) ("The Court in *Heller* seemed to equate the status of a felon . . . with a presumptive disqualification from the Second Amendment right."). Our decision in *Vongxay* forecloses Phillips's argument, and we accordingly affirm the district court's denial of Phillips's motion to dismiss the indictment.[1]

---

[1] Phillips argues that *Vongxay* is not good law. He contends that it conflicted with circuit precedent when it relied, in part, on *United States v. Younger*, 398 F.3d 1179 (9th Cir. 2005), a pre-*Heller* case that held that

Nevertheless, there are good reasons to be skeptical of the constitutional correctness of categorical, lifetime bans on firearm possession by *all* "felons." *Heller*'s caveat endorsed only "longstanding" regulations on firearms, naming felon bans in the process. *Heller*, 554 U.S. at 626–27. Yet courts and scholars are divided over how "longstanding" these bans really are.[2]

---

there is no individual right to bear arms under the Second Amendment. *See Vongxay*, 594 F.3d at 1116. But *Vongxay* acknowledged *Heller*'s holding—that there *is* an individual right under the Second Amendment—notwithstanding the panel's assertion that it was "still bound by *Younger*." *Id.* ("[O]ur holding is buttressed by the fact that *Younger* upheld the very type of gun possession restriction that the Supreme Court deemed 'presumptively lawful' [in *Heller*].").

If the panel had truly considered itself bound by *Younger* in all respects, it would not have analyzed the Second Amendment question at all, since there would have been no claim to an individual right. If Phillips believes that *Vongxay* is inconsistent with *Heller*, his remedy in this court is to seek rehearing en banc.

[2] For instance, some view bans on felon firearm possession as historically stemming from the common law practice of forfeiture. *See, e.g.*, *Chovan*, 735 F.3d at 1144 (Bea, J., concurring) (justifying blanket felon bans based on the idea that at common law, "felonies resulted in forfeiture of property and rights"); Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 Mich. L. Rev. 204, 266 (1983) ("Felons simply did not fall within the benefits of the common law right to possess arms. That law punished felons with automatic forfeiture of all goods, usually accompanied by death."); Don B. Kates, Jr. & Clayton E. Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1363 (2009) (doubling down on the historical pedigree of the felon ban, but conceding it would be "next to absurd" to claim that conviction for modern day felonies like income tax evasion or antitrust violations would disqualify someone from owning a firearm). Others disagree, however, finding little to no historical justification for the practice. *See, e.g.*, *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (observing that first

We understand Phillips's argument here to be different, however. He contends that misprision is non-violent and purely passive and accordingly cannot constitutionally serve as a basis for depriving him of his right to possess a firearm. Although he is right that misprision is not a violent crime, he is wrong about it being "purely" passive. Both in the United States, *United States v. Hodges*, 566 F.2d 674, 675 (9th Cir. 1977), and England, *Sykes v. Director of Public Prosecutions* [1961] 3 All Eng. L. Rep. 33, the crime of misprision of felony has long been interpreted to contain some element of *active concealment*, though a mere lie might be sufficient, *see United States v. Ciambrone*, 750 F.2d 1416, 1418 (9th Cir. 1984) ("A person who witnesses a crime does not violate 18 U.S.C. § 4 if he simply remains silent"). Not since the days of the "hue and cry" has misprision consisted purely of failing to report one's knowledge of a felony. *See* Rollin M. Perkins, Perkins on Criminal Law 514–15 (2d ed. 1969).[3]

federal statute disqualifying violent felons did not exist until 1938 and that first complete federal felon ban did not exist until 1961); *id.* at 650 (Sykes, J., dissenting) ("The historical evidence [on categorical, lifetime exclusion of felons] is inconclusive at best."); C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?* 32 Harv. J.L. & Pub. Pol'y 695, 708–14 (2009) (responding to Kates, "The English right to have arms for self-defense that developed after being announced in the 1689 Declaration of Rights did not specifically exclude 'felons.' . . . The relevant issue is not whether one *forfeited* 'all goods'—implicitly one's guns—upon a felony conviction. One did at common law forfeit personal property . . . upon [felony] conviction . . . . But it did not follow that one could not thereafter purchase and hold new personal property—including a gun."); *id.* at 708 ("[R]ecognizing the hazard of trying to prove a negative, one can with a good degree of confidence say that bans on convicts possessing firearms were unknown before World War I.").

[3] The English "hue and cry" was a duty, at least since the passage of the Statute of Winchester in 1285, requiring any private citizen who became aware of the commission of a felony to publically ("with horn and with

*That* crime never crossed the Pond, as it was understood as being inconsistent with American values. *See Marbury v. Brooks*, 20 U.S. (7 Wheat) 556, 575–76 (1822) (Marshall, C.J.) ("It may be the duty of a citizen to accuse every offender, and to proclaim every offence which comes to his knowledge; but the law which would punish him in every case for not performing this duty is too harsh for man."); Perkins, *supra*, at 514–17.   So Phillips's pure-passivity argument falls short.

And assuming the propriety of felon firearm bans—as we must under Supreme Court precedent and our own—there is little question that Phillips's predicate conviction for misprision of felony can constitutionally serve as the basis for a felon ban.  The statute under which Phillips was convicted here, 18 U.S.C. § 4, is functionally identical to its predecessor, enacted by the First Congress as a part of the Crimes Act of 1790 (*prior* to the ratification of the Second Amendment).  And it similarly made misprision of felony a felony.[4]   Because actions of the First Congress provide

---

voice") call the community together to pursue the felon "from town to town, and from county to county" until apprehended.   4 William Blackstone, *Commentaries on the Laws of England* \*290 (1769).  Failure by either private citizens or the sheriff to discharge this duty was criminally punished, *id.* at \*290–91, though some have contended that "the absence of a reported decision during the four hundred years since the offence first crept into a book" suggests the purely passive form of this crime was "largely theoretical,"   Perkins, *supra*, at 514–15 (internal quotation marks omitted).

[4] *Compare* Crimes Act of 1790, 1 Stat. 113, Sec. 6 ("[I]f any person or persons, having knowledge of the actual commission of . . . [a] felony . . . within any . . . place . . . under the sole and exclusive jurisdiction of the United States, shall conceal, and not as soon as may be disclose and make known the same to some one of the judges or other persons in civil or

"'contemporaneous and weighty evidence' of the Constitution's meaning," *Bowsher v. Synar*, 478 U.S. 714, 723 (1986) (quoting *Marsh v. Chambers*, 463 U.S. 783, 790 (1983)), we are hard pressed to conclude that a crime that has always been a federal felony cannot serve as the basis of a felon firearm ban, simply because its actus reus may appear innocuous.[5]

---

military authority under the United States . . . such person or persons shall be adjudged guilty of misprision of felony, and shall be imprisoned not exceeding three years, and fined not exceeding five hundred dollars." ), *with* 18 U.S.C. § 4 ("Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.").

[5] Our holding does not address, however, the question of whether there are limits on Congress's and the States' ability to define any old crime as a felony and thereby use it as the basis for a § 922(g)(1) conviction, consistent with the Second Amendment. Misprision of felony was, in England, only a misdemeanor if committed by "a common person" (as opposed to "a public officer," in which case the crime was a felony). Blackstone, *supra*, at *121. What little evidence there is of American state misprision law also suggests it was treated as a misdemeanor. *See State v. Wilson*, 67 A. 533, 533–34 (Vt. 1907); Perkins, *supra*, at 514–17. Because the First Congress made misprision a felony prior to the ratification of the Second Amendment, we presume that Congress (and by extension, the States) have some power to change crimes that were misdemeanors into felonies and thereby make them the basis of a felon firearm ban. It may be that Congress's and the States' power in this regard is unfettered, or it may be that only crimes that were treated as felonies at the Founding can serve as the basis for depriving someone of his or her Second Amendment rights. Can Congress or the States define petty larceny as a felony? Of course. Can a conviction for stealing a lollipop then serve as a basis under § 922(g)(1) to ban a person for the rest of his life from ever possessing a firearm, consistent with the Second Amendment? That remains to be seen.

In short, there may be some good reasons to be skeptical about the correctness of the current framework of analyzing the Second Amendment rights of felons. But in light of *Heller* and *Vongxay*, those issues are beside the point here.

**AFFIRMED**.

CHRISTEN, Circuit Judge, concurring:

I fully join the Court's rejection of Phillips's procedural challenge to his sentence. I also agree that our prior precedent and Supreme Court precedent foreclose Phillips's argument that use of his prior conviction as a predicate offense for his § 922(g)(1) conviction violates the Second Amendment. Because binding precedent forecloses Phillips's Second Amendment argument, I would not engage in further analysis or discussion of it. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (Commentary "made during the course of delivering a judicial opinion, but . . . unnecessary to the decision in the case" is "nonbinding dicta" and is "not precedential.").